## WILLIAM SAMPSON v. ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, Appellant.

### Division Two, February 26, 1926.

**RAILROAD: Cattle-Guards: Injury to Cattle.** Although a railroad is not required to fence its right of way at the point where loose cattle entered upon its track at a public-road crossing within its switch limits, it is required by the statute (Sec. 9948, R. S. 1919) to construct and maintain cattle-guards at all crossings of its track where the right of way is required to be fenced, sufficient to prevent the cattle from proceeding along the track and being killed at a different point; and for injury to cattle killed as a result of its failure to maintain such cattle-guards and wing fences at a crossing, wherever the right of way is required to be fenced, it is liable for double damages. The company is not excusable simply because it was not required to construct and maintain cattle-guards at the point where the cattle entered upon the right of way; it is liable if the cattle, after entering, ran along the track and were killed, and it failed to construct and maintain cattle-guards at an intervening crossing where the statute required the right of way to be fenced.

Railroads, 33 Cyc., p. 1182, n. 48.

Transferred from Kansas City Court of Appeals.

AFFIRMED.

*Cyrus Crane, Geo. J. Mersereau, John H. Lathrop, Winston H. Woodson* and *Charles E. Murrell* for appellant.

On the undisputed evidence the plaintiff's cattle having entered the right-of-way at the public crossing and at a point where the railway company was not obligated to maintain a wing fence and cattle-guards, the defendant was not liable, and its demurrer to the plaintiff's evidence and its demurrer at the close of all the evidence should have been sustained. R. S. 1919, sec. 9948; Edie & Sons v. Ry. Co., 133 Mo. App. 9; Gilpin v. Ry. Co., 77 S. W. 118; Gilpin v. Ry. Co., 197 Mo. 319; Pearson v. Ry. Co., 33 Mo. App. 543; Cororan v. Railroad, 138 Mo. App. 408; Hurd v. Chappell, 91 Mo. App. 317; Redmond v. Ry. Co., 104 Mo. App. 651; Swearingen v. Railroad Co., 64 Mo. 73; Robertson v. Railroad Co., 64 Mo. 412; Webster v. Ry. Co., 57 Mo. App. 451; Kirkpatrick v. Railroad, 120 Mo. App. 416; Acord v. Railroad Co., 113 Mo. App. 84; Sowders v. Ry. Co., 104 S. W. 1122; Worley v. Ry. Co., 135 Mo. App. 461; Dorsey v. Railroad, 175 Mo. App. 150; Rucker v. Lusk, 221 S. W. 393; Francis v. Bush, 226 S. W. 57.

*Campbell & Ellison* for respondent.

Section 9948 requires cattle-guards to be maintained at all places where right-of-way fences are required, "and also to construct and maintain cattle-guards where fences are required sufficient to prevent horses, etc., from getting on the railroad." The court could not as a matter of law declare cattle-guards were not required to be maintained at the overhead bridges, or between them and the switch 860 to 1,500 feet to the east "sufficient to prevent cattle" from going on the track. Miller v. Company, 180 Mo. App. 209; Boucher v. Wabash, 199 S. W. 742. The

court in Worley v. Railroad, 135 Mo. App. 464, discuss the meaning of ''entered upon the right-of-way'' and hold that if animals go upon the track at a public road crossing and wander along the tracks and are killed at a place where the statute requires fences and cattle-guards the railroad is responsible ''because the animals got to the place on the right-of-way where they were killed by reason of the fact that the absence of cattle-guards enabled them to do so.'' The Worley case is cited with approval in Raindage v. Wabash, 206 S. W. 396. The statute requires cattle-guards to be constructed wherever fences are required. To exempt defendant from liability in this case would be, in effect, to hold that the statute does not require it to construct and maintain a cattle-guard at any place on its line in this State.

HIGBEE, C.—The plaintiff sued for and recovered judgment in the Circuit Court of Adair County for double damages for the killing of five steers and injuring of five others on the right-of-way of the defendant railway company. This judgment was affirmed on appeal by the Kansas City Court of Appeals. One of the judges deeming the decision in conflict with decisions of this court and with other decisions of the appellate courts of this State, the cause was transferred to this court.

On August 25, 1920, plaintiff shipped a carload of cattle from Kansas City, Missouri, over defendant's railroad to himself at Cardy, a station on defendant's railroad in Macon County, where they were unloaded into defendant's stock pens about nine P. M. Plaintiff, with his assistants, undertook to drive the cattle from said stockpens to his farm in Adair County, and in so doing necessarily drove them upon a public road crossing the railroad tracks between the stock pens and the station, and when the cattle were upon the railroad tracks at said point they broke away and ran west upon the railroad tracks about two miles, where they were struck by one of defendant's trains and some were killed and some were injured. The remainder of the cattle ran still further west

on the track and others were killed and injured by another train. From the west end of the switch limits at Cardy the railroad passes through inclosed and cultivated fields, and it was and had been for many years inclosed by lawful fences on both sides of the right-of-way at the points where the cattle were killed and injured, but there were no cattle-guards at any point on said railroad between the station at Cardy and the station of Elmer, five miles west of Cardy.

It is conceded that the railroad company was under no duty to fence its right-of-way at the point where the cattle entered upon the defendant's track at the public-road crossing within its switch limits. And it may be further conceded that a railroad company is neither required nor permitted to inclose its tracks or station grounds within its necessary switch limits. Appellant contends, in the brief of its learned counsel, that the question whether it should have had wing fences and cattle-guards, has nothing whatever to do with this case. "The cases all hold," so counsel say, "that it makes no difference how far the cattle run along the right-of-way, or how many places they may pass where cattle-guards and wing fences should have been built and maintained, if at the point where they enter the right-of-way the law does not require such cattle-guards and wing fences, there is no liability under the statute."

Section 9948, Revised Statutes 1919, reads, in part: "Every railroad corporation . . . running or operating any railroad in this State, shall erect and maintain lawful fences on the side of the road where the same passes through, along or adjoining enclosed or cultivated fields or unenclosed lands . . . and also to construct and maintain cattle-guards, where fences are required, sufficient to prevent horses, cattle, mules and all other animals from getting on the railroad," etc.

In Edwards v. Railroad Co., 74 Mo. 117, the right-of-way of the railroad company was inclosed by fences up to the south line of the town of Pickering and the open depot grounds of the defendant lying within the limits

of said town. At this point there was a cattle-guard with connecting cross fences only two feet high. Plaintiff's cow entered the inclosed right-of-way over this cross fence and was killed by a train. At page 122, HOUGH, J., said: "At the point where the cattle-guard in question was constructed in the track, it was undoubtedly the duty of the defendant to construct a cross-fence, or other barrier extending from the track to the fences on the sides of the road, 'sufficient to prevent horses, cattle, mules and all other animals from getting on the railroad,' otherwise the fences along the sides of the road and the opening in the track to prevent cattle from walking along the roadbed would be wholly unavailing. Such cross fences, or other barriers, may very properly be considered as necessary parts of the cattle-guard.''

The case is on all-fours with the case at bar.

In Worley v. Railroad, 135 Mo. App. 461, 115 S. W. 1039, a mule went upon a railroad track at the crossing of a public highway and on account of the absence of a cattle-guard, strayed down the track where fences were required and was killed by a train. It was held that the fact that it entered upon the right of way at the crossing of the public highway was no defense. REYNOLDS, P. J., said (p. 465): "But it is clearly prescribed by the statute that cattle-guards must be provided on each side of the road as it is that the road shall be fenced, and if animals get off of the right-of-way where that right-of-way is crossed by a public road, and because of the absence of cattle-guards, wander down or along the right-of-way and on to the track and are killed, then the railroad is responsible in double damages because the animals got to the place on the right-of-way where they were killed by reason of the fact that the absence of cattle-guards enabled them to do so. . . . Every case in which this particular point has been considered holds that under such conditions the railroad is liable in double damages. . . . The statute is as imperative in imposing a double liability where animals are killed by reason of the absence of cattle-guards, as it is by the failure to fence, and is so

plain as hardly to require construction. If the animal gets to the place at which it is killed by a failure to erect and maintain either of these appliances where required, then double damages are recoverable, regardless of where the killing occurred."

See also Johnson v. Railroad Co., 27 Mo. App. 387; Chouteau v. Railroad Co., 28 Mo. App. 560; Acord v. Railroad Co., 113 Mo. App. 90, 87 S. W. 537.

In the majority opinion by TRIMBLE, P. J., in the instant case, it is said: "In many cases the general statement is made that 'it is the place where the animal got on the track, and not where it was killed, that fixes the liability of the road,' and such is a correct statement of the law as applied to the facts in those cases; but the question is can this general statement be correctly applied to the peculiar facts in the case at bar? For instance, the above statement is unquestionably correct in the case of Ehret v. Kansas City Railroad Co., 20 Mo. App. 256, where the issue was whether the cattle were struck while within the limits of the county road across the railroad or whether they got outside of such limits and upon the right-of-way by reason of the failure of the railroad to have a fence and cattle-guard to keep them off it."

The learned judge then reviews Dorsey v. Railroad Co., 175 Mo. App. 160, 157 S. W. 1065; Redmond v. Railroad Co., 104 Mo. App. 651, 77 S. W. 768, and Bumpas v. Wabash Railroad Co., 103 Mo. App. 202, 77 S. W. 115, and shows they are opposed to appellant's contention. Continuing, TRIMBLE, P. J., says:

"The case of Gilpin v. Missouri Railroad Co., 197 Mo. 319, 94 S. W. 869, has no application to the facts of the present case, for no contention is made herein that cattle-guards should be placed where necessary switching is to be done. In the Gilpin case there were no cattle-guards at the side of a public road crossing and could not be, since switch-tracks crossed the county road with ends of such switch-tracks on each side of the road. And the court say, on page 322; 'it was necessary for its employees in operating these switches to pass on foot over the tracks

at this crossing, and that a cattle-guard there would endanger their lives.' Moreover this case was not on the Double-Damage Act, but is on Section 9949, providing that if live stock go in on the right-of way and the railroad is not, at such point, required to be fenced, the railroad is liable for frightening or injuring such stock.''

Other cases are reviewed by the learned judge, but we will not make further citations. Appellant concedes it has built and maintained fences on both sides of its right-of-way where plaintiff's cattle were killed and injured. There can be no question that the statute required it to build and maintain these fences. The statute is equally clear that it is required to construct and maintain cattle-guards, where fences are required, sufficient to prevent horses, cattle, mules and all other animals from getting on the railroad; and until such fences . . . and cattle-guards as aforesaid shall be made and maintained, such corporation shall be liable in double the amount of all damages which shall be done by its agents, engines or cars to horses, cattle, mules or other animals escaping from or coming upon said lands, fields or enclosures, occasioned in either case by the failure to construct or maintain such fences or cattle-guards. This statute is so plain and perspicuous that even the traditional wayfaring man need not err therein. There has been much loose writing in some of the cases, which has given occasion for the contention of the appellant's learned counsel, but it is too obvious for controversy that their contention in this respect, if sustained, would work a judicial repeal of the statute; in fact, that every railroad company in this State could, with impunity, operate its line without constructing or maintaining cattle-guards and wing fences, in the face of the plain mandate of the statute.

There is no controversy about the amount of damages assessed for the killing and injuring of plaintiff's cattle.

The majority opinion of the Court of Appeals is approved, and the judgment of the circuit court is affirmed. *Railey, C.,* concurs.

PER CURIAM:—The foregoing opinion by HIGBEE, C., is adopted as the opinion of the court. All of the judges concur.